Madam Clerk, would you call the final argument for this morning? Case number 24-1963 from the Northern District of Iowa, United States v. Devonta Cobbs Mr. Ramstad, when you're prepared, please proceed May it please the court, counsel, your honor, I'm Rick Ramstad. I represent Devonta Cobbs in this appeal. Mr. Cobbs was charged in a single-count indictment with possessing a firearm, being addicted to or user of a controlled substance, namely marijuana, and he entered a guilty plea pursuant to a conviction. Mr. Cobbs was charged in a conditional plea agreement and now brings this facial challenge to 18 U.S.C. 922-G3, asserting the statute's prohibition against the possession of firearms by those who are addicted to or use controlled substances, violates the Second Amendment under Bruin's two-step analysis. In short, following Bruin, the question is not whether criminalizing this conduct always violates the Constitution, but whether the law implicates the plain text of the Second Amendment, and it does here. We've got post-Bruin precedent in the Eighth Circuit. We do, your honor, and I intend to address that. How about the Clark case of January 3? Are you familiar with the Clark case? I am familiar with the Clark case. Doesn't it control this issue in this case? I think Veasley probably is what originated the decision in Clark.  And Veasley, of course, gives us a much more – Veasley purports to give us the historical analog exercise that Jackson didn't really get into. And, of course, Veasley was petitioned for cert, and that was denied. I'm aware of that, too. On the other hand, a number of these cases, the Supreme Court has been remanding with the direction to consider the case in light of its recent ruling in Rahimi, and that's what my argument here today is ultimately. And the second Jackson case considered Rahimi, too, right, of this court? There were two Jackson opinions, one before Rahimi and one after Rahimi. So we've got Jackson, too, sitting out there. We've got Veasley sitting out there, and we've got Clark sitting out there. And so the real question for us as a three-judge panel is whether or not our hands are tied by precedent. Well, the Supreme Court hasn't exactly taken up a 922G3 case yet. We are familiar with that. So here we are, and I can address my thoughts regarding Veasley, which I think took the most in-depth analysis of the situation in 922G3 cases. And Veasley rejected the facial challenge, which that was a facial challenge case like this one, and purporting to employ the analogs. In that particular case, the court outlined its justifications. It referenced the mentally ill, and in doing so, the justification was to keep hands out of presumptively risky people. But the Veasley court kind of just passed over the due process aspect of those mentally ill cases, and historically speaking, references the fact that justice of the peace would make this determination, and then this disarmament would follow. And in the 922G cases, there is no pre-judgment due process. The court in Veasley points out that there is due process in the form of a trial, but of course that is only after an arrest and potentially incarceration pending that trial. And all along this course, the question never becomes, like the mental illness cases, whether or not this person presents a danger to society. So Veasley also looks to the other offenses historically of going armed. And a going armed offense, as contemplated under Veasley, was actually doing something with this firearm that was objectively a danger to the community. Whereas the 922G3 cases, there does not have to be any showing of danger. And that's... using some substance that might be dangerous. But the reality of the situation is that is no sort of determination of dangerousness, not in the individualized perspective. For example, in Rahimi, the disarmament takes place after there is a determination by a court that this person presents some sort of danger. And then the court goes to some lengths to point out that disarmament is not for a lifetime. It was for, in that particular case, was going to be a period of years during his incarceration. But what we're talking about here is a lifetime ban for something that could be a wholly transient, if any, danger at all. Counsel, I take it by your answer, you do not assert an as-applied challenge, right? We did not assert that below. Yeah, thank you. So in this particular case, it's really the complete, or in these cases in general, the complete lack of a finding of specified dangerousness is the basis for why I would ask this court to consider readdressing this issue. And I will reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Ramstad. Mr. Fairchild. May it please the court. Counsel, my name is Ford Fairchild. I represent the United States of America. And yes, Your Honor, though I'm loathe to be the one to say it, your hands, Mr. Judge Erickson, are tied in this case. On January 19th, 2024, the defendant entered a conditional guilty plea preserving only his right to make a facial challenge to 18 U.S.C. 923. Take a look at the plea agreement, RDOC 110. It's explicit. The only right of appeal reserved is the facial challenge. My learned colleague, both in his brief and here at argument, kind of falls into the as-applied language, but he's admitted both in his brief and today that he is constrained to only make the facial challenge. That dooms his argument for the obvious reasons that the court's aware of. For him to prevail today, he has to prove that there is no way that this statute can be applied constitutionally, and he can't do that in the face of Beasley, and he can't do it in the face of See and Clark and Jackson too. Those courts have spoken definitively on this issue. This panel is powerless to overrule another panel that's Dang and Pryor, for example. That leaves us with binding authority, control, and dictating the results in this case. The defendant cannot make an as-applied challenge. His arguments for a facial challenge are doomed, regardless of what this course's personal thoughts on these subjects might be. I want to comment just one point further. There's some discussion about this being a lifetime ban. Well, of course, the government has made the point in other contexts. It's not a lifetime ban. It exists so long as the person is addicted or a user consistent with the jury instructions of the circuit. It's an unlawful user, right? Yes. So that's where we're at. And we know what addicted means because 102 defines it. Unlawful user is not defined, but it seems like that's a fairly straightforward kind of dictionary consideration. And so the ban is only that you have to be unlawfully using a narcotic. That, I would assume, means you have to be unlawfully using it at the time, right? No requirement that you show that you are intoxicated, but they do have to show that you are unlawfully using at or near the time of the offense. Right? That's right. Or you have to be an addict. Yes, Your Honor. And the jury instructions help establish what is proximally too far and close enough. So the temporal proximity is established by the jury instruction. Yes, Your Honor. Well, I guess I'm the bearer of bad news. Yes, Your Honors, your hands are tied. Yes, Your Honor, the case is controlled by other panel decisions in this court. Nothing in Ramey changes that. This is a matter of, it appears, settled law, at least at this point. Unless there are questions, Your Honors? I see none. Thank you, Your Honor. Thank you, Mr. Fairchild. Thanks, Court, for taking the opportunity to listen to my arguments. And I would just reiterate, perhaps Mr. Fairchild's characterization of doom will be decided on another day. But in the meantime, if the Court has any questions, I welcome the opportunity to try to address them. I see none. Thank you. Thank you, Counsel. Thank you for participating in argument before the Court this morning. We will continue to study the matter, render decision as promptly as possible. Thank you.